FILED BY _____ D.C.

SEP 24 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **19-20623-CR-ALTONAGA**

/GOODMAN

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

**RICHARD SANTO MALLIA,**

  Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States

Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States.

5. Part B of the Medicare program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services.

6. For Florida beneficiaries, Medicare Part B's insurance coverage for physician and outpatient services and related health care benefits, items, and services was administered by First Coast Services Options, Inc. ("First Coast"), pursuant to a contract with HHS.

7. Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider

who ordered the services.

## Part A Coverage and Regulations

### Reimbursements

8.  The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

   a.  was confined to the home, also referred to as homebound;

   b.  was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

   c.  the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a P.O.C. for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

9.  HHAs were reimbursed under the Home Health Prospective Payment System ("PPS"). Under PPS, Medicare paid Medicare-certified HHAs a predetermined base payment for each 60 days that care was needed. This 60-day period was called an "episode of care." The base payment was adjusted based on the health condition and care needs of the beneficiary. This adjustment was done through the Outcome and Assessment Information Set ("OASIS"), which was a patient assessment tool for measuring and detailing the patient's condition. If a beneficiary was still eligible for care after the end of the first episode of care, a second episode could commence. There were no limits to the number of episodes of home health benefits a beneficiary could receive as long as the beneficiary continued to qualify for home health benefits.

3

10.	In order to be reimbursed, the HHA would submit a Request for Anticipated Payment ("RAP") and subsequently receive a portion of its payment in advance of services being rendered. At the end of a 60-day episode, when the final claim was submitted, the remaining portion of the payment would be made.

### Record Keeping Requirements

11.	Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare to review the appropriateness of Medicare payments made to the HHA under the Part A program.

12.	Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were: (i) a P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

### Part B Coverage and Regulations

13.	The Medicare Part B program generally would pay a substantial portion of the cost of the physician or outpatient services or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

14. Payments under Medicare Part B were often made directly to the health care provider rather than to the patient or beneficiary. For this to occur, the beneficiary would assign the right of payment to the health care provider. Once such an assignment took place, the health care provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

15. Under Medicare's rules and regulations, physician and outpatient services and related health care benefits, items, or services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare.

16. A health care service that may be reimbursed by Medicare under Part B is nail debridement, which involves the removal of a diseased toenail bed or viable nail plate. Medicare will reimburse for nail debridement services only when certain conditions are met, such as when the patient has mycosis of the toenail with limited movement and pain or a secondary infection caused by one or more mycotic toenails.

### The Defendant and Related Companies and Individuals

17. Sunshine Medical Care Group, Inc. ("Sunshine") was a Florida corporation located at 2990 W. Flagler Street, Suite 406, Miami, Florida, that previously did business under the name Sunshine Medical and Pain Management, Inc.

18. Elite Home Care, LLC ("Elite") was a Florida company located at 1200 NW 78 Avenue, #114, Doral, Florida.

19. Care First Home Health Corp. ("Care First") was a Florida corporation located at 8242 NW 103 Street, Hialeah Gardens, Florida.

20. D & V Home Health Care, Inc. ("D & V") was a Florida corporation located at 8280 NW 27th Street, Suite #516, Doral, Florida.

21. Brothers Home Health Care, Inc. ("Brothers") was a Florida corporation located at 3900 NW 79th Avenue, Suite #569, Doral, Florida.

22. Ariamni Home Health Corp. ("Ariamni") was a Florida corporation located at 2550 NW 72 Avenue, Suite #215, Miami, Florida.

23. Playa Azul Home Health Care, Inc. ("Playa Azul") was a Florida corporation located at 945 S.W. 87th Avenue, Miami, Florida.

24. Ventus Home Health LLC ("Ventus") was a Florida company located at 7175 S.W. 8th Street, Suite #212, Miami, Florida.

25. Lorenzo Services, Inc. d/b/a Mega Home Health Care, Inc. ("Mega Home Health") was a Florida corporation located at 6741 Coral Way, Suite #38, Miami, Florida.

26. Florida Patient Care Corp. ("FPC") was a Florida corporation located at 1971 NW 7 Street, Miami, Florida.

27. Defendant **RICHARD SANTO MALLIA**, a resident of Miami-Dade County, was a podiatrist licensed to practice medicine in Florida. **MALLIA** was employed as a physician at Sunshine from in or around October 2012 through in or around June 2017.

28. Juliette Anais Tamayo, a resident of Miami-Dade County, was an operator of Sunshine beginning in or around October 2009.

29. Jorge Lorenzo was a resident of Miami-Dade County.

30. Individual 1 was a resident of Miami-Dade County.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around October 2012, and continuing through in or around at least September 2018, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHARD SANTO MALLIA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Juliette Anais Tamayo, Jorge Lorenzo, Individual 1, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

    a. to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

    b. to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and

foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for **RICHARD SANTO MALLIA** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting and receiving kickbacks and bribes in return for generating prescriptions for Medicare beneficiaries that falsely and fraudulently represented that home health care services were medically necessary; (b) submitting and causing the submission of false and fraudulent claims to Medicare, via interstate wire communication, for services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which **RICHARD SANTO MALLIA** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **RICHARD SANTO MALLIA** falsely certified to Medicare that he would comply with all of Medicare's rules and regulations, including that he would not violate the federal Anti-Kickback Statute or submit false and fraudulent claims to Medicare.

5. **RICHARD SANTO MALLIA**, Juliette Anais Tamayo, Individual 1, and other co-conspirators solicited and received kickbacks and bribes from Jorge Lorenzo and others in return for prescribing home health care services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided.

6. **RICHARD SANTO MALLIA** and his co-conspirators falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of medical records, to include home health care orders, face-to-face documentation, and home health certifications and plans of care, to support claims to Medicare for home health care services that were obtained through kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and not provided.

7. **RICHARD SANTO MALLIA**, Jorge Lorenzo, and other co-conspirators submitted and caused the submission of false and fraudulent claims, via interstate wire communication, to Medicare seeking reimbursement for health care benefits, items, and services, including home health care and nail debridement, that were obtained through kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and not provided.

8. Based on those false and fraudulent claims, **RICHARD SANTO MALLIA** and his co-conspirators caused Medicare to make approximately $7.73 million in payments to Sunshine, Elite, Care First, D & V, Brothers, Ariamni, Playa Azul, Ventus, Mega Home Health, and FPC.

9. **RICHARD SANTO MALLIA** and his co-conspirators diverted the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
## Health Care Fraud
## (18 U.S.C. § 1347)

1.  The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.  From in or around October 2012, and continuing through in or around at least September 2018, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHARD SANTO MALLIA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.  It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare for health care services that were obtained through kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and never provided; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## The Scheme and Artifice

4. The allegations contained in the Manner and Means section of Count 1 are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

5. On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHARD SANTO MALLIA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent claims, which sought the identified dollar amounts, representing that such services were medically necessary, eligible for Medicare reimbursement, and provided to Medicare beneficiaries as claimed:

| Count | Approximate Date of Service | Beneficiary Name | Services Billed | Approximate Amount Billed | Claim Number |
|---|---|---|---|---|---|
| 2 | August 25, 2015 | R.V. | Debridement of mycotic nails | $300.00 | 591115237231390 |
| 3 | April 12, 2016 | R.V. | Debridement of mycotic nails | $160.00 | 590216201006680 |
| 4 | August 23, 2016 | R.V. | Debridement of mycotic nails | $50.00 | 591016244355420 |

In violation of Title 18, United States Code, Sections 1347 and 2.

11

## COUNT 5
### Conspiracy to Defraud the United States and to Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around October 2012, and continuing through in or around at least September 2018, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHARD SANTO MALLIA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Juliette Anais Tamayo, Jorge Lorenzo, Individual 1, and others known and unknown to the Grand Jury:

　　a.　to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, in violation of Title 18, United States Code, Section 371; and

　　b.　to violate Title 42, United States Code, Section 1320a-7b(b)(1)(B), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) soliciting and receiving kickbacks and bribes in return for

12

prescriptions for home health care services for Medicare beneficiaries; (b) submitting and causing the submission of claims to Medicare for home health care services that home health agencies purported to provide to Medicare beneficiaries; and (c) diverting the kickback proceeds for their personal use and benefit, the use and benefit of others, and to further the kickback scheme.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **RICHARD SANTO MALLIA** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.  **RICHARD SANTO MALLIA**, Juliette Anais Tamayo, Individual 1, and others solicited and received kickbacks and bribes from co-conspirator Jorge Lorenzo and others in return for home health prescriptions for Medicare beneficiaries.

5.  Co-conspirators, including Jorge Lorenzo, used the home health prescriptions from **RICHARD SANTO MALLIA** to bill Medicare for home health care services purportedly provided to Medicare beneficiaries.

6.  **RICHARD SANTO MALLIA**, Juliette Anais Tamayo, Individual 1, and others diverted the kickback proceeds for their personal use and benefit, the use and benefit of others, and to further the kickback scheme.

### OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.  On or about October 8, 2014, **RICHARD SANTO MALLIA** signed a prescription for home health care services for Medicare beneficiary L.C. in return for a kickback payment from Jorge Lorenzo.

2. On or about October 10, 2014, **RICHARD SANTO MALLIA** signed a prescription for home health care services for Medicare beneficiary J.R. in return for a kickback payment from Juliette Anais Tamayo.

3. On or about October 22, 2014, **RICHARD SANTO MALLIA** signed a prescription for home health care services for Medicare beneficiary O.D.T. in return for a kickback payment from Jorge Lorenzo.

4. On or about November 12, 2014, **RICHARD SANTO MALLIA** signed a prescription for home health care services for Medicare beneficiary N.H. in return for a kickback payment from Jorge Lorenzo.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 982(a)(7))

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **RICHARD SANTO MALLIA,** has an interest.

2. Upon conviction of any criminal violation alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property described above, as a result of any act or omission of any defendant:

 (a) cannot be located upon the exercise of due diligence;

 (b) has been transferred or sold to, or deposited with, a third party;

 (c) has been placed beyond the jurisdiction of the court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America to seek forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____

FOREPERSON

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ALLAN MEDINA
ACTING DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ALEXANDER THOR POGOZELSKI
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| RICHARD SANTO MALLIA, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| _____ Defendant. ____/ | **Superseding Case Information:** |

**Court Division:** (Select One)
✓ Miami ___ Key West
___ FTL ___ WPB ___ FTP

New defendant(s)           Yes ____   No ____
Number of new defendants   ____
Total number of counts     ____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     No
   List language and/or dialect     _____

4. This case will take __3-5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                               (Check only one)
   I    0 to 5 days        ✓                      Petty     ____
   II   6 to 10 days       ____                   Minor     ____
   III  11 to 20 days      ____                   Misdem.   ____
   IV   21 to 60 days      ____                   Felony    ✓
   V    61 days and over   ____

6. Has this case previously been filed in this District Court?     (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)     No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes ____   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes ____   No ✓

_____
ALEXANDER THOR POGOZELSKI
DOJ TRIAL ATTORNEY
COURT ID NO. A5502016

*Penalty Sheet(s) attached                                                           REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     **RICHARD SANTO MALLIA**

**Case No:** _____

Count #:  1

   Conspiracy to Commit Health Care Fraud and Wire Fraud

   Title 18, United States Code, Section 1349

**\*Max Penalty**:  Twenty (20) years' imprisonment

Count #:  2

   Conspiracy to Defraud the United States and to Receive Health Care Kickbacks

   Title 18, United States Code, Section 371

**\*Max Penalty**:  Five (5) years' imprisonment

Counts #:  3 – 5

   Health Care Fraud

   Title 18, United States Code, Section 1347

\*Max Penalty:  Ten (10) years' imprisonment as to each count

Count #:

_____

_____

\*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**